# MoloLamken

Steven F. Molo
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: 212.607.8160
F: 212.607.8161
smolo@mololamken.com
www.mololamken.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
FILED: 10/4/18

October 4, 2018

BY ECF

Hon. Richard J. Sullivan
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *Argos Holdings Inc. v. Wilmington Trust, National Association*, 18 Civ. 5773

Dear Judge Sullivan:

We represent six counterclaim defendants sued in their individual capacities as directors of PetSmart, Inc. ("PetSmart") and Argos Holdings Inc. ("Holdings") in the above-captioned case. Pursuant to Section 2.A of Your Honor's individual practices, we submit this letter in anticipation of a motion to dismiss brought on behalf of Paulette R. Dodson, Alan M. Schnaid, Cezar M. Froelich, and Scott D. Vogel (collectively, "the Holdings Directors").[1]

Counterclaim Six, the sole claim asserted against the Holdings Directors by Wilmington Trust, National Association, acting as agent for Citibank and various lenders (collectively, "Wilmington Trust"),[2] arises out of a series of transactions undertaken by PetSmart and Holdings. *See* Dkt. 34 (the "Counterclaim"). In June 2018, PetSmart distributed 20% of the stock of Chewy.com to Holdings, PetSmart's parent. *Id.* ¶¶ 53-54. The same day, Holdings distributed that same Chewy.com stock to Argos Intermediate Holdco III Inc., ("Argos Intermediate"), Holdings' parent, which then transferred the stock to its wholly-owned subsidiary, Buddy Holdings Corp. *Id.* ¶ 54.

The Counterclaim alleges that the transfers of stock from PetSmart to Holdings, and from Holdings to Argos Intermediate, each constituted payment of an illegal dividend, in violation of DEL. CODE ANN. tit. 8 §§ 170, 173, and 174. The Counterclaim further alleges that PetSmart

---

[1] Two of the Holdings Directors, Paulette R. Dodson and Alan M. Schnaid, were also directors of PetSmart. The anticipated motion to dismiss is solely directed to these counterclaim defendants in their capacities as Holdings Directors and not in their capacities as PetSmart Directors. We have answered on behalf of the PetSmart directors.

[2] On March 11, 2015, PetSmart, Holdings, Citibank, and various lenders entered into a credit agreement (the "Credit Agreement") through which Citibank and the lenders extended credit to PetSmart. *See* Dkt. 34, Counterclaim Preamble. Pursuant to the Credit Agreement, PetSmart financed a leveraged buyout using a Term Loan and an additional Note. *Id.* ¶ 38. In May 2017, PetSmart again accessed credit under the Credit Agreement to finance the purchase of Chewy.com, an online retailer of pet supplies, in the form of two additional Notes: *Id.* ¶ 43-44.

was insolvent when it paid the dividend to Holdings and that Holdings received an illegal dividend from PetSmart. *Id.* ¶¶ 52, 86-94, 172.

As to the Holdings Directors, the Counterclaim alleges:

> 167. In causing Holdings to declare a dividend, the directors on Holdings' board knew that Holdings was insolvent and lacked adequate surplus, but the directors willfully diverted value from Holdings to Argos Intermediate Holdco III Inc. for the benefit of its equity owner, the BC Partners Consortium.

> 171. The directors of Holdings knew that PetSmart was insolvent at the time of the receipt of the dividend.

The Counterclaim alleges no other facts bearing on the Holdings Directors' role in the transactions or Holdings' insolvency.

### Overview of Anticipated Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to state a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a claim is brought under a particular statute, the court must ask whether the plaintiff "has a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).[3] Wilmington Trust has failed to allege sufficient factual matter to state a plausible counterclaim against the Holdings Directors under § 174.

**1. Wilmington Trust Fails to Allege that It Is a Creditor of Holdings**

Section 174 of the Delaware Code, on which Wilmington Trust relies, states:

> (a) In case of any wilful or negligent violation of . . . § 173 [declaration and payment of dividends] of this title, the directors under whose administration the same may happen shall be jointly and severally liable . . . to the corporation, and ***to its creditors in the event of its dissolution or insolvency***, to the full amount of the dividend unlawfully paid. . .

DEL. CODE ANN. tit. 8 § 174 (emphasis added).

This statute provides a limited cause of action against directors by creditors of an insolvent corporation for money damages. A creditor may only pursue an action against a corporation's directors pursuant to § 174 if it was a creditor of the corporation at the time of the action challenged under the statute. *Johnston v. Wolf*, 487 A.2d 1132, 1137 (Del. 1985). A

---

[3] While Delaware law addresses a party's creditor status as an issue of standing, *see Johnston v. Wolf*, 487 A.2d 1132, 1137 (Del. 1985), the Supreme Court has suggested that a lack of "statutory standing" is properly asserted as a failure to state a claim. *See Lexmark Int'l, Inc*, 572 U.S. at 128 n. 4.

creditor for purposes of § 174 is one who "extended any credit" to a corporation "on the basis of that corporation's stated capital." *Id.*

The Counterclaim does not allege that Wilmington Trust was a creditor of Holdings. It states specifically that the "Lenders are creditors of PetSmart," Counterclaim ¶ 163, but does ***not*** state the same as to Holdings. Under the Credit Agreement and related Notes, Holdings was a guarantor of PetSmart's debt; Holdings was not a borrower on the debt. Wilmington Trust therefore fails to state an essential element of its § 174 claim against the Holdings Directors.

2. **Wilmington Trust Fails to Adequately Allege That Holdings Is Insolvent**

Section 174 authorizes creditors to recover against a corporation's directors if the corporation is insolvent. DEL. CODE ANN. tit. 8 § 174. Unlike the detailed allegations describing PetSmart's insolvency, *see* Counterclaim ¶¶ 86-94, the Counterclaim contains only one conclusory statement regarding Holdings' alleged insolvency: "the directors on Holding's board knew that Holdings was insolvent and lacked adequate surplus." *Id.* ¶ 167.[4] Such a barebones assertion – lacking any factual support – regarding an essential element of a § 174 claim cannot survive a Rule 12(b)(6) motion to dismiss.

3. **Delaware Law does not Recognize Director Liability for Allowing Corporate Receipt of an Illegal Dividend**

Section 174 establishes director liability for the *payment* of an unlawful dividend but does not establish such liability for a corporation's *receipt* of an unlawful dividend. There is no statutory claim under Delaware law or legal authority authorizing a cause of action against directors of a corporation for the corporation's receipt of an unlawful dividend, as opposed to the directors' receipt of such dividends as individuals. *Cf. In re Sheffield Steel Corp.*, 320 B.R. 405 (N.D. Okla. 2004) (recovery allowed when individual directors received illegal dividend). There is no allegation the directors personally received the dividend. Thus, Wilmington Trust fails to state a claim against the Holdings Directors for Holdings' receipt of the dividend.

For the foregoing reasons, the Holdings Directors – Dodson, Schnaid, Froelich, and Vogel – will respectfully request that the Court dismiss Counterclaim Six.

\*   \*   \*   \*   \*

---

[4] There is a cryptic reference to Holdings' insolvency in paragraph 94, but even that reference stops short of stating that Holdings was insolvent.

Respectfully submitted,

s/ Steven F. Molo
STEVEN F. MOLO
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
smolo@mololamken.com

Megan Cunniff Church, *admitted pro hac vice*
Allison Gorsuch, *pending admission pro hac vice*
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
mchurch@mololamken.com
agorsuch@mololamken.com

*Counsel to Counterclaim-Defendants Alan M. Schnaid, Paulette R. Dodson, Paul Keglevic, Peter S. Kravitz, Scott D. Vogel, and Cezar M. Froelich*

IT IS HEREBY ORDERED THAT counterclaim Plaintiff and the individual counterclaim Defendants shall appear for a pre-motion conference regarding the individual counterclaim Defendants' anticipated motion to dismiss the sixth counterclaim on Thursday, October 25, 2018 at 12:00 p.m. IT IS FURTHER ORDERED THAT counterclaim Plaintiff shall respond to this letter by Wednesday, October 10, 2018 pursuant to Rule 2.A of the Court's Individual Rules and Practices.

SO ORDERED
Dated: 10/4/18

RICHARD J. SULLIVAN
U.S.D.J.

4