# ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP

1801 K Street, N.W., Suite 411 L
Washington, D.C. 20006
Phone (202) 775-4500
Fax (202) 775-4510
www.robbinsrussell.com

Mark T. Stancil　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(202) 775-4520
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　mstancil@robbinsrussell.com

October 10, 2018

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
40 Foley Square, Room 2104
New York, New York 10007
sullivannysdchambers@nysd.uscourts.gov

　　　　Re:　*Argos Holdings Inc., et al. v. Wilmington Trust, National Association*
　　　　　　　No. 18 Civ. 5773 (RJS)

Dear Judge Sullivan:

　　　　We represent Defendant and Counterclaim-Plaintiff Wilmington Trust, National Association, solely in its capacity as the Administrative Agent (the "Agent") under the Credit Agreement, dated as of March 11, 2015 (as amended, restated, modified, or supplemented from time to time, the "Credit Agreement"), among PetSmart, Inc. ("PetSmart"), Argos Holdings Inc. ("Holdings"), the lenders from time to time party thereto (the "Lenders"), and the Agent.

　　　　Pursuant to Rule 2.A of the Court's Individual Rules and Practices, we write in response to the pre-motion letter filed by the directors of Holdings on October 4 (Dkt. 85) (the "Letter").

　　　　As the Letter recognizes, two dividends are at issue.  The first was from PetSmart to its parent, Holdings.  The second was from Holdings to its parent.  Neither dividend, we assert, complied with Delaware law.  Yet, the directors of Holdings—who were in the middle of these transactions, as Holdings was the middle step—seek dismissal of the claim against them.

　　　　To state its claim against the Holdings directors, the Agent must establish, among other things, (i) that the Agent, and the Lenders on whose behalf it acts, were "creditors" of Holdings, 8 Del. C. § 174(a), and (ii) that Holdings was "insolven[t]," *id.*  The Holdings directors argue that the Agent has alleged neither.[1]

---

[1] The Holdings directors further argue that they may not be liable for allowing Holdings to receive an illegal dividend from PetSmart.  Letter at 3.  Solely for the purposes of this letter, and reserving all rights, the Agent does not contest that argument.

Hon. Richard J. Sullivan
October 10, 2018
Page 2

The arguments of the Holdings directors are unpersuasive. The Agent has alleged that Holdings is a party to the Credit Agreement creating the debt and that Holdings was insolvent. Dkt. 34 (the "Counterclaims") pmbl., ¶ 167. Moreover, the Holdings directors ignore critical facts that the Court should consider on a motion to dismiss.

### 1. The Agent and the Lenders were "creditors" of Holdings.

The statute at issue provides for liability only to Holdings' "creditors." 8 Del. C. § 174(a). There is no statutory definition of that word. Nor does case law define it, though Delaware courts have noted that the statute's "purpose . . . is to provide a cause of action to creditors who have extended credit to a corporation based on that corporation's stated capital." *Johnston v. Wolf*, 487 A.2d 1132, 1134 (Del. 1985) (quotation marks omitted).

Under any definition, however, the Agent and Lenders were "creditors" of Holdings. Holdings is a "Guarantor" under the Guarantee Agreement, which is an exhibit to the Credit Agreement. As a Guarantor, Holdings is just as liable as PetSmart is for the debts under the Credit Agreement. Specifically, Holdings "guarantees . . . as a primary obligor and not merely as a surety, by way of an independent payment obligation, the due and punctual payment" of those debts. Guarantee Agreement § 2.01. Moreover, Holdings' guarantee is "a Guarantee of payment when due . . . and not merely of collection," with no requirement that creditors exhaust their remedies against PetSmart. *Id.* § 2.02. And Holdings is a direct signatory to the Credit Agreement. In short, Holdings is ultimately responsible for PetSmart's obligations to the Agent and the Lenders; under any reasonable definition of the term "creditor," that obligation suffices to make the Agent and the Lenders creditors of Holdings.

That the Counterclaims did not quote these provisions is irrelevant. On a motion to dismiss, the Court is not limited to the four corners of the pleading. It also should consider "materials incorporated in [the pleading] by reference, and documents that, although not incorporated by reference, are integral to the [pleading]." *Capitol Records LLC v. Redigi Inc.*, No. 12-cv-95 RJS, 2014 WL 4354675, at *1 (S.D.N.Y. Sept. 2, 2014) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). A document is incorporated by reference if "the pleading contains extensive quotes from the document." *City of Livonia Emps' Ret. Sys. v. Essner*, No. 07 Civ. 10329 (RJS), 2009 WL 1809984, at *2 (S.D.N.Y. June 25, 2009). And a document is "integral" where "the [pleading] relies heavily upon [the document's] terms and effect"—as when the document "is a contract . . . containing obligations upon which the [pleading] stands or falls." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quotation marks omitted).

The Credit Agreement—and thus the Guarantee Agreement it contains—satisfy these standards for consideration on a motion to dismiss. The Credit Agreement is incorporated by reference because the Counterclaims quote extensively from it. *E.g.*, Counterclaims ¶¶ 8, 14, 60, 76, 79, 96, 97, 108, 111, 158, 178, 181. In any event, the Credit Agreement is integral to the Counterclaims. The Agent brings the Counterclaims solely in its capacity as Administrative Agent under the Credit Agreement.

In any event, the Agent may amend its Counterclaims to address and refute the Holdings directors' contention. The amendments need do no more than provide the relevant language

Hon. Richard J. Sullivan
October 10, 2018
Page 3

from the Credit and Guarantee Agreements. (For still further assurance and for the Court's convenience, the Credit Agreement is attached to the proposed Second Amended Counterclaims and is thus "part of the pleading for all purposes." Fed. R. Civ. P. 10(c).)

The Agent may amend its Counterclaims once as a matter of course within 21 days of service of Counterclaim-Defendants' answer or motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). The Case Management Plan and Scheduling Order does not displace that rule. Dkt. 78 ¶ 4. Should leave to amend be necessary, the Agent respectfully requests that this letter be construed as a pre-motion letter under this Court's Individual Rule 2.A. Pursuant to that Rule, we have attached the Second Amended Counterclaims and a blackline comparison thereof with the initial Counterclaims. The standard for leave to amend is satisfied here, where the Holdings directors have not even attempted to make "a showing . . . of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

### 2. **Holdings was insolvent.**

The statute at issue renders directors liable to creditors "in the event of [the corporation's] . . . insolvency." 8 Del. C. § 174(a). The insolvency of *PetSmart* is not at issue. The Holdings directors acknowledge that the Agent has alleged PetSmart's insolvency in "detail[]." Letter at 3. But those allegations, the Holdings directors contend, do not suffice to allege that *Holdings* was insolvent.

Here, too, the Credit Agreement defeats the Holdings directors' contention. Holdings agreed in the Credit Agreement that it would "not conduct, transact or otherwise engage in any business or operations other than . . . the ownership and/or acquisition of the Equity Interests of [PetSmart]." Credit Agreement § 6.06.[2] In other words, Holdings may be nothing more and nothing less than the owner of PetSmart. This restriction has certain enumerated exceptions, but none of them would allow Holdings to have assets other than its equity interests in PetSmart. *Id.* The exceptions do, however, allow Holdings to incur certain liabilities. For example, they permit Holdings to guarantee the Credit Agreement debt (which it has done), as explained in the previous section, putting Holdings on the hook for billions of dollars in obligations. Holdings has no assets other than its equity interests in PetSmart, but it is liable for the same debt as PetSmart is under the Credit Agreement, and is thus no more solvent than PetSmart is.

As explained above, the Court should consider the Credit Agreement on a motion to dismiss, and the Agent may amend the Counterclaims to include the Credit Agreement.

\* \* \*

We are pleased to address these issues in greater detail at the pre-motion conference scheduled for October 25.

---

[2] Holdings may also own the equity of an "Intermediate Parent," if one exists. Here, however, none exists. Counterclaims ¶ 19.

Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP

Hon. Richard J. Sullivan
October 10, 2018
Page 4

Respectfully submitted,

s/ Mark T. Stancil

Mark T. Stancil (admitted *pro hac vice*)

*Counsel to Defendant and Counterclaim-Plaintiff Wilmington Trust, National Association, as Administrative Agent*