UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
ARGOS HOLDINGS INC. and PETSMART INC., :
                                     :
            Plaintiffs,              :           18cv5773(DLC)
                                     :
      -v-                            :        OPINION AND ORDER
                                     :
WILMINGTON NATIONAL ASSOCIATION, as  :
Administrative Agent,                :
                                     :
            Defendant, Counterclaim- :
            Plaintiff,               :
                                     :
      -v-                            :
                                     :
ARGOS INTERMEDIATE HOLDCO III INC.,  :
BUDDY CHESTER CORP., BUDDY CHESTER SUB :
CORP., BUDDY HOLDINGS CORP. ALAN M.  :
SCHNAID, PAULETTE R. DODSON, PAUL    :
KEGLEVIC, PETER S. KRAVITZ, SCOTT D. :
VOGEL, and CEZAR M. FROELICH,        :
                                     :
            Counterclaim-Defendants. :
                                     :
------------------------------------ X

APPEARANCES

For the plaintiffs:
Michael S. Shuster
Dwight A. Healy
Benjamin F. Heidlage
Matthew Gurgel
Holwell Shuster & Goldberg LLP
425 Lexington Avenue
New York, New York 10017

For the defendant:
Mark T. Stancil
Kathryn S. Zecca
Rachel S. Li Wai Suen
Joshua S. Bolian
Lauren M. Cassady
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP

2000 K Street, NW, 4th Floor
Washington, DC 20006

DENISE COTE, District Judge:

Plaintiffs PetSmart, Inc. ("PetSmart") and Argos Holdings, Inc. ("Holdings") have moved pursuant to Fed. R. Civ. P. 26(c) for a protective order with respect to thirteen sets of documents on the grounds of attorney-client and work product privileges.  For the reasons that follow, that motion is granted for three of the thirteen sets.

## Background

The communications at issue were made by or on behalf of attorneys to three individuals, or were forwarded to those individuals by PetSmart personnel.  Those three individuals hold two positions of relevance to this dispute.  They are each partners in the principal investor in the plaintiffs -- the private equity firm BC Partners, Inc. ("BC Partners") -- and they also serve as members of the board of the plaintiffs' ultimate owner, which is Argos Holdings GP LLC ("Argos GP").[1]
The three individuals are Raymond Svider ("Svider"), Michael

---

[1] PetSmart is a wholly owned subsidiary of Holdings.  Holdings is wholly owned, through a series of intermediaries, by Argos Holdings, L.P. ("Argos LP").  Argos Holdings GP LLC ("Argos GP") is the general partner of Argos LP, and manages Argos LP's business.  BC Partners and each of its co-investors own a stake in both Argos GP and Argos LP.

Chang ("Chang"), and Fahim Ahmed ("Ahmed", together "Three Individuals"). They are three of the seven members of the Argos GP board, and exercise a majority of the votes on the board by virtue of Argos GP's LLC Agreement. In addition to being Argos GP directors, Ahmed was Vice President and Secretary of Argos GP, Chang was Vice President and Treasurer of Argos GP, and Svider was Executive Chairman of PetSmart until June 2018.

The attorneys at issue are the law firms Kirkland & Ellis LLP ("Kirkland") and Simpson Thacher & Bartlett LLP ("Simpson Thacher"). Both law firms were retained by Argos GP and related entities to advise them in connection with transactions at issue here. They were not retained by BC Partners in connection with these matters, and BC Partners was not their client. In brief, the transactions are the following.

BC Partners' acquisition of PetSmart was financed through a Credit Agreement dated March 11, 2015 ("the Credit Agreement"). Defendant and counterclaim-plaintiff Wilmington Trust, National Association ("Wilmington Trust") is the Administrative Agent under the Credit Agreement and represents the interests of the lenders under the Credit Agreement.

In 2017, PetSmart acquired Chewy, Inc. ("Chewy"), an online pet supply retailer. Simpson Thacher advised PetSmart,

Holdings, Argos LP, and Argos GP concerning that transaction. In June 2018, PetSmart transferred some Chewy stock to Holdings, which then transferred the same stock to other entities wholly owned by Argos LP, but not by PetSmart. PetSmart also transferred some Chewy stock to a newly formed indirect subsidiary of PetSmart. Kirkland advised the same four entities -- PetSmart, Holdings, Argos LP, and Argos GP -- concerning these two transactions ("the Transactions"), which are the primary subject of this litigation.

PetSmart and Holdings filed this action on June 26, 2018, seeking a judgment compelling Wilmington Trust, as Administrative Agent under the Credit Agreement, to release liens on Chewy's assets and the transferred Chewy stock and to release Chewy's guarantees of PetSmart's debt. Wilmington Trust contends that the Transactions did not comply with the Credit Agreement and applicable law and has counterclaimed.

On December 26, 2018, Wilmington Trust filed a letter requesting a conference to address a dispute regarding ninety-four documents over which plaintiffs asserted the attorney-client privilege. That dispute as well as other discovery issues were addressed at a pretrial conference on January 18, 2019. An Order of January 23 directed the parties to file any

motion for a protective order with respect to the ninety-four documents by January 28. On January 24, plaintiffs agreed to produce the majority of the withheld documents subject to a non-waiver stipulation.[2] In many instances, those produced documents were addressed to BC Partners personnel in addition to the Three Individuals.

Plaintiffs filed a motion for a protective order as to the thirteen sets of documents on January 28, and provided those documents to the Court, with proposed redactions, for in camera review. In that motion, the plaintiffs principally argued that Argos GP was a client of the two law firms and that the legal advice communicated to the Three Individuals, who were members of the Argos GP board, is privileged. The plaintiffs described PetSmart, its intermediate parents, and Argos GP as the common clients of the law firms. The defendant opposed the motion, principally by pointing out that the Three Individuals were also partners in BC Partners, which was not a client of the law firms. The defendant asserted that the plaintiffs had not carried their burden to show that the Three Individuals received the communications in their capacity as Argos GP board members.

_____

[2] Since that time, the plaintiffs have also produced other documents pursuant to a non-waiver stipulation.

In reply, the plaintiffs advanced a new theory to protect the communications. They assert that there is no need to determine in what capacity the Three Individuals received the privileged communications since, where there is no conflict of interest, a stockholder is entitled to assert the privilege as to communications with its representatives on the board of directors of one of its portfolio companies. In light of this new argument, the defendant was invited to submit a sur-reply. The defendant contends that a capacity analysis remains necessary since the mere fact of corporate parentage or ownership does not expand the privilege. According to the defendant, unless the entities are jointly represented or the common interest doctrine applies, neither of which has been asserted here, an investor may not invoke the privilege possessed by the portfolio company. The motion became fully submitted on March 4.

## Discussion

New York law governs the plaintiffs' assertion of the attorney-client privilege because this is a diversity action regarding a claim for which New York law supplies the rule of decision. See Fed. R. Evid. 501. Moreover, each of the parties has relied on New York law in addressing this motion. See Arch

Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009).  It is noteworthy, however, that the "New York law of attorney-client privilege is, with certain exceptions, substantially similar to the federal doctrine."  HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, 70 n.6 (S.D.N.Y. 2009) (Lynch, J.).

In New York, "[t]he attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship."  Ambac Assur. Corp. v. Countrywide Home Loans, Inc., 27 N.Y.3d 616, 623 (2016) (citing N.Y. C.P.L.R. § 4503(a)(1)).  The attorney-client privilege is "narrowly construed."  Id. at 624.  The mere fact that attorneys are involved in a communication does not cloak it with privilege. To qualify for the privilege, a communication must be "generated for the purpose of obtaining or providing legal advice as opposed to business advice."  In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007).  In determining the purpose of a communication, courts consider "whether the predominant purpose . . . is to render or solicit legal advice."  Id. at 420. "[L]egal advice involves the interpretation and application of

legal principles to guide future conduct or to assess past

conduct." Id. at 419. "The party asserting the privilege bears

the burden of establishing its entitlement to protection . . .

." Ambac, 27 N.Y.3d at 624.

"Generally, communications made in the presence of third

parties, whose presence is known to the client, are not

privileged from disclosure because they are not deemed

confidential." Ambac, 27 N.Y.3d at 624.

> While as a general matter the attorney-client
> privilege applies only to communications between
> lawyers and their clients . . . under certain
> circumstances, the privilege for communication with
> attorneys can extend to shield communications to
> others when the purpose of the communication is to
> assist the attorney in rendering advice to the client.

United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011)

(citation omitted). Where communications from a client to a

consultant are made in confidence and "for the purpose of

obtaining legal advice from the lawyer," the communication is

privileged. United States v. Kovel, 296 F.2d 918, 922 (2d Cir.

1961). "[I]f the advice sought is the [consultant]'s rather

than the lawyer's, no privilege exists." Id. This extension,

however, "has always been a cabined one" that protects

"communications between a client and an attorney, not

communications that prove important to an attorney's legal

8

advice to a client." Mejia, 655 F.3d at 132.

In New York, "where two or more clients separately retain counsel to advise them on matters of common legal interest, the common interest exception allows them to shield from disclosure certain attorney-client communications that are revealed to one another for the purpose of furthering a common legal interest." Ambac, 27 N.Y.3d at 625 (2016). This exception applies "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel in the course of an ongoing common enterprise and multiple clients share a common interest about a legal matter." Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015). "Demonstrating the applicability of the common interest doctrine requires a two-part showing: (1) the party who asserts the rule must share a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought must have been designed to further that interest." Swerdlow, 259 F.R.D. at 71 (citation omitted).[3] The doctrine "does not . . . encompass a joint business strategy which happens to include

_____

[3] Although New York law provides the rule of decision in this diversity action, see Fed. R. Evid. 501, "New York Courts applying the common interest rule to civil proceedings have often looked to federal case law for guidance." Swerdlow, 259 F.R.D. at 71 n.8.

as one of its elements a concern about litigation . . . ." Id.
(citation omitted). The common interest must be of "sufficient
legal character to prevent a waiver by the sharing of . . .
communications." Schaeffler, 806 F.3d at 41. New York law
further requires that the common legal interest involve "pending
or reasonably anticipated litigation." Ambac, 27 N.Y.3d at 628.

Attorney work product is also protected from discovery.[4]
Schaeffler, 806 F.3d at 43. "Documents prepared in anticipation
of litigation are work product, even when they are also intended
to assist in business dealings." Id. To determine whether
documents were prepared "in anticipation of litigation," courts
in this Circuit look to the test established in United States v.
Adlman, 134 F.3d 1194 (2d Cir. 1998). Under that governing
precedent,

> [a] document will be protected if, in light of the
> nature of the document and the factual situation in
> the particular case, the document can fairly be said
> to have been prepared or obtained because of the
> prospect of litigation. Conversely, protection will
> be withheld from documents that are prepared in the
> ordinary course of business or that would have been
> created in essentially similar form irrespective of
> the litigation.

---

[4] The work product doctrine is a creature of federal law. See
Fed. R. Civ. P. 26(b)(3). The parties rely on federal law in
addressing the claimed work product. See Arch Ins. Co., 584
F.3d at 39.

10

Schaeffler, 806 F.3d at 43 (emphasis in original) (citation omitted).

Each of the communications submitted for in camera review appears to have been created "for the purpose of obtaining or facilitating legal advice in the course of a professional relationship." Ambac, 27 N.Y.3d at 623. Ordinarily, such communications, if made between an attorney and a client and not disclosed to a third party, would be privileged.

The plaintiffs do not argue that Kirkland & Ellis or Simpson Thacher were counsel to BC Partners in connection with the communications, or that BC Partners shared a common legal interest with plaintiffs or Argos GP that was furthered by those communications. The question to be resolved, therefore, is whether the communications were with BC Partners, and if so, whether that would constitute a waiver of the privilege. Cf. Allied Irish Banks, P.L.C. v. Bank of America, N.A., 252 F.R.D. 163, 169 (S.D.N.Y. 2008) (to the extent that individuals receiving privileged communications were not acting on behalf of the client and received the communications in another capacity, the privilege is lost); Am. S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Alcoa S.S. Co., Inc., 232 F.R.D. 191, 198 (S.D.N.Y 2005) ("When a Director of the [corporation] is acting

on behalf of the member entity of which he is an officer, he can neither disseminate confidential information he has received as a Board member nor pierce the privilege to obtain additional information.").

Plaintiffs' Evidentiary Support for This Motion

The plaintiffs contend principally that the communications were made to a client because the Three Individuals received the communications pursuant to their status as directors at Argos GP. The plaintiffs have not, however, made a document by document presentation to explain why that is so. Instead, they rely on little more than the simple fact that the Three Individuals were directors of Argos GP at the time they received or sent the communications. They argue, without explanation, that the Three Individuals' concurrent employment by BC Partners should be ignored.

In support of this application, the plaintiffs submitted two brief declarations. Ahmed has declared that as "directors of Argos GP" at the time they sought and received legal advice from Simpson Thacher and Kirkland," Svider, Chang and he "understood that our communications with Simpson Thacher and Kirkland would be protected by the attorney-client privilege." A Kirkland partner has submitted a declaration that represents

that he and other Kirkland attorneys involved in the engagement
"have understood that at all times we are communicating with GP
Board Members in their capacity as Argos GP board members and
through them with our client, Argos GP.  It is likewise my
understanding that in communication with Kirkland & Ellis, the
GP Board Members understood that the communications were
confidential and were protected by the attorney-client
privilege."

These declarations are insufficient to establish that the
communications were privileged.  There is no submission from a
Simpson attorney.  Neither Svider nor Chang submitted an
affidavit.  The two declarations that were submitted from Ahmed
and a Kirkland attorney are conclusory.  See In re Grand Jury
Subpoena Dated July 6, 2005, 510 F.3d 180, 184 (2d Cir. 2007).
They do not explain why, if the communications were with the
Three Individuals in their capacity as directors of Argos GP,
the communications were not sent to every board member.  They do
not explain the basis for the purported understanding that the
communications were confidential.  They do not assert that this
purported understanding meant that neither the communications
nor their contents could be shared with individuals outside of
Argos GP and its related entities, and specifically, that they

could not be shared with BC Partners.  Nor do they assert that
the communications were in fact kept confidential and not, for
instance, shared with other personnel at BC Partners.  Given the
intense engagement of BC Partners with the transactions
discussed in the documents, it would have been incumbent upon
Argos GP, if it wished the communications to be treated as
privileged, to take steps to ensure that they were kept
appropriately confidential.  After all, when the Three
Individuals received the communications they were partners at BC
Partners and had an obligation to act to protect the interests
of BC Partners.

There is no established litmus test to assess the capacity
in which communications were received where a recipient plays
multiple roles in a transaction, with only one of those roles
allowing for the receipt of privileged communications.
Nonetheless, the following factual gaps are noteworthy.
Plaintiffs, who bear the burden of establishing that the
privileges apply, have not described any measures taken to
prevent disclosure to BC Partners of privileged communications
with Argos GP personnel, officers or directors.  They have not
identified any document, protocol, or training designed to
protect the privilege.  Despite their having PetSmart email

accounts, many of the documents were sent to the Three
Individuals at their BC Partners email addresses, and thus were
stored on BC Partners' email servers.  The plaintiffs have not
explained whether that gave other BC Partners personnel, in
addition to the Three Individuals, access to the communications.
Storage on the BC Partners servers certainly made it more
difficult to protect the communications as communications
belonging to Argos GP and protected by its attorney client
privilege.  Accordingly, unless an examination of the documents
provides additional evidence that they were sent to the Three
Individuals in their capacity as directors of Argos GP, the
plaintiffs have not carried their burden to show that their
application for a protective order should be granted.

Documents Protected by the Privilege

The plaintiffs have carried their burden of showing that
the proposed redactions to three sets of documents are protected
by the attorney-client privilege.[5]  First, the plaintiffs seek to
redact portions of an email chain of April 15, 2017 containing a

---

[5] The plaintiffs have divided the thirteen emails that they seek
to withhold into six categories.  Each of the emails and
attachments has been submitted to the Court for in camera review
as an exhibit to the declaration of Matthew Gurgel ("the Gurgel
Declaration").

question regarding the Chewy acquisition, and counsel's response to the question, as conveyed by Ahmed (Exhibit A). Each of the documents in the chain is addressed to the entire Argos GP Board. While the email addresses for the Three Individuals are their BC Partners email addresses, it appears that the email addresses of the other Board members are also email addresses associated with other employment and not their membership on the Argos GP board. Because the correspondence is with the entire Argos board, the plaintiffs' application is granted with respect to this document.

Two other sets of documents relate to litigation hold notices sent at the direction of counsel on June 22 and June 27, 2018 to individuals listed on a schedule of recipients (Exhibits K and L). The listed individuals were identified on the schedules as PetSmart executives, the directors of Argos GP and PetSmart, and the Three Individuals. The schedules identify each of the Three Individuals by their relationship to PetSmart or Argos GP.[6] The schedules do not identify any recipient as

---

[6] "Raymond Svider, former Executive Chairman, PetSmart, Inc. and current consultant, PetSmart, Inc.," "The Board of Directors of Argos Holdings GP LLC in their capacity as directors," "Michael Chang, Vice President and Treasurer, Argos Holdings GP LLC," and "Fahim Ahmed, Vice President and Secretary, Argos Holdings GP LLC."

associated with BC Partners.  This identification of capacity is
sufficient to find that the documents relate to the Three
Individuals' membership on the Argos GP Board.[7]  Additionally,
the email history attached to the email forwarded in Exhibit L
indicates that the Three Individuals received this communication
at their PetSmart.com email addresses.  The plaintiffs'
application is therefore granted with respect to these
documents.

Documents Not Protected by the Privilege

The motion for a protective order is otherwise denied.  In
none of the following communications are there indications that
the correspondence with the Three Individuals was in connection
with their service as directors of Argos GP as opposed to their
partnership in BC Partners.  In several of the documents,
Svider's email address is identified as a "BCP Contact," and
Chang and Ahmed's email addresses are identified as "external."
None of these communications were sent to the entire Argos GP
Board.

The plaintiffs seek to withhold the entirety of an email

---

[7] In addition to being protected by attorney-client privilege,
these documents are protected work product because they were
prepared at the direction of Kirkland because of this
litigation.

17

sent on April 27, 2017 (Exhibit B).  The email, which concerns an excess cash flow calculation, was sent by a PetSmart executive to counsel and was copied to others at PetSmart and to Chang.  The attachment, the PetSmart excess cash flow calculation, was produced in discovery.

The plaintiffs seek to withhold a May 1, 2017 draft offering document prepared by counsel for the Chewy acquisition (Exhibit C).  The cover email, sent by counsel to PetSmart officers, Chang, and Ahmed has been produced.

The plaintiffs seek to withhold a May 2, 2017 draft of the description of the unsecured notes (Exhibit D).  The plaintiffs have produced the cover email from counsel, which was sent to PetSmart personnel.  Chang, Ahmed and additional counsel were copied on the email.

The plaintiffs have produced a PetSmart certification pursuant to PetSmart's engagement letter with its accountants. The plaintiffs, however, seek to redact passages from a related email chain of May 31, 2018.  Most of the emails were between counsel and a PetSmart officer, and relate to issues to be addressed at a PetSmart board meeting.  A PetSmart officer forwarded the email chain and certification to Chang at his BC Partners email address, indicating it was "Fyi" (Exhibits E and

F).[8]

The plaintiffs seek to withhold a draft PetSmart earnings call script containing revisions by counsel, attached to a May 31, 2018 email chain, which has been produced (Exhibit G). The emails are between counsel and the Three Individuals. PetSmart's CFO is copied on the last email in this chain. The emails are sent to and from the BC Partners email addresses of the Three Individuals.

The plaintiffs have produced an August 1, 2018 email from counsel to the Three Individuals, PetSmart officers, and persons who appear to be employees of the financial advisory firm Houlihan Lokey. They have withheld a draft power point presentation regarding a corporate transaction referred to as Operation Buddy (Exhibit H). Svider is listed as the first person to whom the materials were sent, and he is identified as "Raymond Svider BCP Contact". Chang and Ahmed's email addresses are identified as "Michael Chang External Email" and "Fahim Ahmed External Email."

The plaintiffs seek to withhold an August 6, 2018 draft of a power point presentation also related to Operation Buddy, but

---

[8] Exhibits E and F are substantially the same. The emails to Chang in the two exhibits were sent just moments apart.

have produced the cover email from counsel (Exhibit I).  In this email, Svider is again identified as the "BCP Contact," but is listed second.  Chang and Ahmed's email addresses are listed as "external."  The other recipients are PetSmart officers and employees of Houlihan Lokey.

On September 17, 2018, counsel sent an email to Svider, identified again as the "BCP Contact", Chang, Ahmed, PetSmart officers, and employees of Houlihan Lokey attaching a document describing an aspect of Operation Buddy (Exhibit J).  Chang and Ahmed's email addresses are identified as "external."  The email has been produced, but the plaintiffs seek to withhold disclosure of the attachment.

Finally, the plaintiffs seek to withhold a draft PetSmart earnings call script, attached to a September 5, 2018 email which has been produced (Exhibit M).  Counsel sent the email to Svider, again identified as "BCP Contact."  Copied on the email were Chang, Ahmed, (again, at "external" email addresses) and certain PetSmart officers.

<u>Remaining Arguments</u>

The plaintiffs make two additional arguments in support of their motion.  To support their claim that the communications were intended for the Three Individuals in their capacity as

Argos GP board members, rather than as investors in Argos GP and
its subsidiaries through their company BC Partners, plaintiffs
note that no other BC Partners personnel were copied on these
emails.  This absence stands in contrast to other emails which
the plaintiffs have now agreed to produce pursuant to a non-
waiver agreement.  The practice of copying BC Partners personnel
on communications regarding the Transactions and related events
is less than helpful to the plaintiffs.  The fortuity that those
additional personnel were not included on this handful of
communications does not establish that their absence was
intentional.  The plaintiffs have not pointed to the substance
of these emails as having any particular relevance to Argos GP,
rather than BC Partners, especially when compared to the other
now-produced emails.  Again, if the communications did relate to
the business of Argos GP and to the Three Individuals as members
of the Argos GP board, it is puzzling that the emails were not
addressed to the full Argos GP board.

Finally, the plaintiffs seek to extend the entity's
privilege to its shareholders and investors.  They assert that
it is "well-established that where a stockholder of a
corporation appoints directors to a company's board, the
stockholder is entitled to the same privileged information as

its representative."  Not so.  The weight of authority holds

that shareholders are not entitled to corporate documents

protected by attorney-client privilege absent litigation between

the shareholders and the company and a showing of good cause.

See Garner v. Wolfinbarger, 430 F.2d 1093, 1104 (5th Cir. 1970).

See also In re Dow Corning Corp., 261 F.3d 280, 286 (2d Cir.

2001) (endorsing exception articulated by the Fifth Circuit in

Garner); Fitzpatrick v. Am. Intern. Grp., Inc., 272 F.R.D. 100,

110-11 (S.D.N.Y. 2010); Urban Box Office Network, Inc. v.

Interfase Managers, L.P., 01cv8854 (LTS), 2005 WL 1639392, at *1

(S.D.N.Y. July 12, 2005).  The Delaware cases cited by the

plaintiffs are inapposite.  They address the circumstances in

which directors may have access to the entity's privileged

communications in the context of litigation.  See Moore Bus.

Forms, Inc. v. Cordant Holdings Corp., Civ. A. Nos. 13911,

14595, 1996 WL 307444, at *4 (Del. Ch. June 4, 1996) (memorandum

opinion); KLM v. Checchi, No. C.A. 14764-NC, 1997 WL 525861, at

*1 (Del. Ch. July 23, 1997) (letter opinion); In re CBS Corp.

Litig., C.A. No. 2018-0342-AGB, 2018 WL 3414163, at *7 (Del. Ch.

Jul, 13, 2018) (letter opinion).

    In In re Teleglobe Commc'ns Corp., 493 F.3d 345 (3d Cir.

2007), cited by the plaintiffs, the Third Circuit noted that a

parent company and its subsidiary will often share in a
privilege because they are joint clients of a single firm, or
because the common interest doctrine applies.  Id. at 369-70.
As noted at the outset, the plaintiffs admit that neither
Kirkland nor Simpson Thacher were acting as counsel for BC
Partners in these matters.  They have not asserted that the
communications are protected by the common interest doctrine.
The Third Circuit noted as well that "treating members of a
corporate family as one client fails to respect the corporate
form."  Id. at 371.  The plaintiff's resort to the argument that
an entity's privilege extends to its shareholders and investors
suggests that Argos GP and its counsel did not guard the
privilege with the diligence required to protect it.

### Conclusion

The plaintiffs' January 28 motion for a protective order is
granted with respect to the documents submitted for in camera
review as Exhibit A, K, and L to the Gurgel Declaration.  The
motion for a protective order is denied with respect to the
remaining documents.

Dated:    New York, New York
          March 28, 2019

                                    _____
                                           DENISE COTE
                              United States District Judge

23